**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ALEIDA AQUINO and BRENDALIS
LOPEZ,

        Plaintiffs,

v.

HAZLETON AREA SCHOOL
DISTRICT,

        Defendant.

CIVIL ACTION NO.
3:24-CV-00206

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT HAZLETON AREA SCHOOL DISTRICT'S MOTION TO
<u>DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

Daniel T. Brier
Patrick J. Brier
Donna A. Walsh
Timothy E. Gates
Richard L. Armezzani
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503

Chad Dunn (*pro hac vice*)
Bernadette Reyes (*pro hac vice*)
Sonni Waknin (*pro hac vice*)
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90020

Peter D. Winebrake
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025

Frederick P. Rooney
7 West Morton Street
Bethlehem, PA 18105

*Attorneys for Plaintiffs, Aleida Aquino and Brendalis Lopez*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 2

LEGAL STANDARD .................................................................................... 3

ARGUMENT ................................................................................................. 4

    I.   Section 2 of the VRA Provides a Private Right of Action ..................... 4

        A.   Precedent holds that Section 2 is privately enforceable ................. 4

        B.   The VRA's text, structure and legislative history require
            recognition of a private right of action ............................................ 7

        C.   Section 2 is enforceable through 42 U.S.C. § 1983 ........................ 9

    II.   The Complaint Sufficiently Pleads a Violation of Section 2 ............. 10

    III.   The Complaint Sufficiently Pleads a Violation of the Fourteenth
        Amendment ......................................................................................... 17

CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*In re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267 (3d Cir. 2004) ........................... 15

*Alabama State Conf. of NAACP v. City of Pleasant Grove*, 372 F. Supp. 3d 1333, (N.D. Ala. 2019) .................................................................................. 12

*Alabama State Conf. of NAACP v. Alabama*, 949 F.3d 647 (11th Cir. 2020), *cert. granted, op. vacated, and case dismissed as moot*, 141 S. Ct. 2618 (2021) ......... 6

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ............................................................ 7

*Allen v. Milligan*, 599 U.S. 1 (2023) ........................................................................ 5

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969) .............................................. 8

*American Trucking Ass'n, Inc. v. Larson*, 683 F.2d 787 (3d Cir. 1982) ................. 16

*Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023), *reh'g denied*, 91 F.4th 967 (8th Cir. 2024) .................... 6,7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................. 4, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 3, 13

*Chisom v. Roemer*, 501 U.S. 380 (1991) ................................................................. 5

*Coca v. City of Dodge City*, 669 F. Supp. 3d 1131 (D. Kan. 2023) .................... 9, 11

*Columbus Bd. of Ed. v. Penick*, 443 U.S. 449 (1979) ........................................ 18, 19

*County of Monmouth v. Rite Aid Corp.*, No. 20-CV-2024, 2023 WL 2743921 (E.D. Pa. Mar. 31, 2023) ........................................................................... 16

*Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114 (3d Cir. 2013) ................................................................................................ 4

*Erikson v. Pardus*, 551 U.S. 89 (2007) ................................................................. 13

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (2009) ...................................... 4

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ......................................... 7, 9

*Goosby v. Town Bd of Hempstead, N.Y.,* 180 F.3d 476 (2d Cir.1999) ................... 14

*Guy v. State of Del.*, No. 00-831, 2003 WL 22005853 (D. Del. Aug. 20, 2003) ...... 6

*Hall v. Louisiana*, 974 F. Supp. 2d 978 (M.D. La. 2013) ......................... 12

*Houston Laws.' Ass'n v. Att'y Gen.*, 501 U.S. 419 (1991) ........................ 5

*Jenkins v. Manning*, 116 F.3d 685 (3d Cir. 1997) ................................ 6

*League of United Latin Am. Citizens v. Abbott*, No. 1:21-CV-991, 2022 WL
174525 (W.D. Tex. Jan.18, 2022) .............................................. 11, 12

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999
F.2d 831 (5th Cir. 1993) ..................................................... 15

*League of United Latin Am. Citizens v. Perry (LULAC)*, 548 U.S. 399 (2006) ....... 5

*Luna v. County of Kern*, No. 1:16-CV-568, 2016 WL 4679723
(E.D. Cal. Sept. 6, 2016) .................................................... 11, 12

*Maine v. Thiboutot*, 448 U.S. 1 (1980) ........................................... 9

*Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh, Pa.*, 686 F. Supp. 97
(W.D. Pa. 1988) .............................................................. 6

*Milwaukee Branch of NAACP v. Thompson,* 116 F.3d 1194
(7th Cir.1997) ............................................................... 14

*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) ..................................... 6

*Morse v. Republican Party of Va.*, 517 U.S. 186 (1996) ................. 1, 4, 5, 6, 7, 8, 9

*Neitzke v. Williams*, 490 U.S. 319 (1989) ....................................... 13

*Nipper v. Smith*, 39 F.3d 1494 (11th Cir.1994) .................................. 15

*Old Person v. Cooney*, 230 F.3d 1113 (9th Cir. 2000) ............................................. 14

*Page v. Bartels*, 248 F.3d 175 (3d Cir. 2001) ............................................................. 6

*Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420 (2017) .................................................. 15

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)........................... 3, 14, 20

*Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989) ...................................................... 6

*Robinson v. Ardoin*, 86 F.4th 574 (5th Cir. 2023)....................................................... 5

*Rogers v. Lodge*, 458 U.S. 613 (1982) ............................................................... 18, 20

*Rose v. Raffensperger*, 511 F. Supp. 3d 1340 (N.D. Ga. 2021).............................. 17

*Sanchez v. Colorado*, 97 F.3d 1303 (10th Cir.1996) ............................................... 14

*Schuchardt v. President of the United States*, 839 F.3d 336 (3d Cir. 2016)........... 13

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) .............................................. 5

*Teague v. Attala Cnty., Miss.*, 92 F.3d 283 (5th Cir. 1996) ..................................... 14

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015) ............................................................................................. 9

*Thornburg v. Gingles*, 478 U.S. 30 (1986)...................... 5, 10, 11, 12, 14, 15, 16, 17

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533 (1983) ............. 6

*Tigrett v. Cooper*, 855 F. Supp. 2d 733 (W.D. Tenn. 2012) .................................... 13

*Travelers Cas. & Surety Co. v. Falkowski*, No. 15-6737, 2021 WL 2355915
   (E.D. Pa. June 9, 2021)....................................................................................... 16

*Turtle Mountain Band of Chippewa Indians v. Jaeger*, No. 3:22-CV-22, 2022
   WL 2528256 (D.N.D. July 7, 2022)................................................................... 10

iv

*United States v. Charleston Cnty., S.C.*, 365 F.3d 341 (4th Cir. 2004) .................. 14

*Uno v. City of Holyoke*, 72 F.3d 973 (1st Cir. 1995) ............................................... 14

*Victaulic Co. v. Tieman*, 499 F.3d 227 (3d Cir. 2007) ............................................. 17

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252
    (1977) ............................................................................................................... 18, 19

*Voinovich v. Quilter*, 507 U.S. 146 (1993) .................................................................. 5

*Whitcomb v. Chavis*, 403 U.S. 124 (1971) ................................................................ 18

## STATUTES

42 U.S.C. § 1983 ............................................................................................. 1, 9, 10

52 U.S.C. § 10301(a) ............................................................................................ 1, 7

52 U.S.C. § 10301(b) ............................................................................................. 16

52 U.S.C. § 10302(a) ............................................................................................... 8

52 U.S.C. § 10310(e) ............................................................................................... 8

Public Law 109-246, 120 Stat. 577

Fed. R. Civ. P. 8 ....................................................................................................... 1

Fed. R. Civ. P. 8(a) .................................................................................................. 3

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 3

Fed. R. Civ. P. 12(b)(6) ........................................................................ 4, 13, 15, 17, 20

Fed. R. Evid. 201(b)(2) ........................................................................................... 16

**INTRODUCTION**

Plaintiffs Aleida Aquino and Brendalis Lopez are Hispanic voters and mothers of children attending school in Defendant Hazleton Area School District ("HASD") who are denied equal participation in the electoral process due to the way in which HASD school board members are elected. Their Complaint alleges that the at-large election system unlawfully dilutes the votes of Hispanics who make up nearly 40% of HASD residents and 65% of HASD students and whose preferred candidates consistently lose in races for the Hazleton Area School Board ("HASB") due to racially polarized voting. They bring this action pursuant to Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301(a), and the Fourteenth Amendment to enjoin the racially discriminatory at-large election system.

HASD mounts three attacks on Plaintiffs' claims, all of which lack merit. *First*, HASD incorrectly argues that individuals cannot sue under the VRA. The Supreme Court recognized long ago that Section 2 of the VRA confers a private right of action. *Morse v. Republican Party of Va.*, 517 U.S. 186 (1996). Alternatively, Section 2 is enforceable in an action under 42 U.S.C. § 1983, a certainty that HASD ignores. *Second*, HASD argues that Plaintiffs failed to plead their Section 2 claim with "credible specificity" and should be denied leave to amend based on layered inferences it draws from materials outside the Complaint. These arguments fail because they defy Rule 8. *Third*, HASD erroneously contends that Plaintiffs did not

sufficiently allege intentional discrimination in violation of the Fourteenth Amendment. The Complaint amply alleges facts showing that HASD is purposefully perpetuating at-large elections to deny Hispanics equal access to the political process in violation of the constitutional equal protection guarantee.

The Court should deny HASD's motion.

## FACTUAL BACKGROUND

Plaintiffs are U.S. citizens, Hispanic, parents of HASD students, and registered voters who reside within the HASD. (Compl. ¶¶ 1-3.) The HASD is governed by the HASB which consists of nine members elected at-large. (*Id.* ¶¶ 14-15.)

The Hispanic population in the HASD has grown substantially over the past two decades. (*Id.* ¶ 9.) As of 2022, Hispanics made up 39.6% of the population of the HASD and 65.7% of the student body. (*Id.* ¶¶ 8, 13.) The Hispanic community is concentrated in the City of Hazleton and the neighboring Borough of West Hazleton which have Hispanic populations of 62.2% and 66.5%, respectively. (*Id.* ¶¶ 10-11.) Although Hispanic candidates receive significant support in primarily Hispanic precincts in Hazleton and West Hazleton, no Hispanic has ever been elected to serve on the HASB. (*Id.* ¶¶ 12, 25-26.)

The Complaint alleges that the lack of diversity on the HASB is the result of racially polarized voting. (*Id.* ¶¶ 12, 21-24.) The White population in the HASD

votes routinely and sufficiently as a bloc to defeat Hispanic candidates of choice. (*Id.* ¶ 22.)   The Complaint further alleges that Hispanic candidates have been generally unsuccessful in local, state and municipal elections, again despite receiving significant support in primarily Hispanic precincts.  (*Id.* ¶¶ 12, 27.)

These election results are not surprising given the discrimination directed at Hispanics in the HASD.  The Complaint details ways in which Hispanics in the HASD have suffered racial discrimination affecting their voting rights and also in education, policing, and employment.  (*Id.* ¶¶ 28-34.)  The Complaint further alleges that HASD officials have turned a blind eye to needs of the Hispanic community. (*Id.* ¶ 34.)  Under the totality of the circumstances, the at-large voting system dilutes the voting strength of Hispanics and deprives them of an equal opportunity to participate in the electoral process in violation of the VRA and Fourteenth Amendment.  (*Id.* ¶¶ 35, 39, 44.)

## **LEGAL STANDARD**

Rule 8(a) of the Federal Rules of Civil Procedure directs that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff need not "set out *in detail* the facts upon which he bases his claim."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (citation and internal quotation marks omitted); *Phillips v. Cnty. of Allegheny* 515 F.3d 224, 231 (3d Cir. 2008) (*Twombly* "leaves intact" pleading standard under

which "detailed factual allegations" are not required).  Instead, a plaintiff need only raise "a plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 118 (3d Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

When considering a Rule 12(b)(6) motion, the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true. *Id.* at 119 n.5.  Allegations are sufficient if they "raise a reasonable expectation that discovery will reveal evidence" of elements necessary to the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (2009) (citation and internal quotation marks omitted).

## **ARGUMENT**

### I.    **Section 2 of the VRA Provides a Private Right of Action.**

Without analysis of the statute's text or legislative history, HASD asks this Court to ignore precedent and significant litigation by private plaintiffs and instead declare there is no private right of action under Section 2.  Its argument is untenable and should be rejected.

### A.    **Precedent holds that Section 2 is privately enforceable.**

The Supreme Court recognized in *Morse* that private parties may sue to enforce Section 2.  The central issue in *Morse* was whether individuals are permitted to challenge a party registration fee as a poll tax prohibited by Section 10 of the

VRA. 517 U.S. at 190. Justice Stevens's lead opinion, which was joined by Justice Ginsburg, explained that, "[a]lthough § 2, like § 5, provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965,'" and noted the Supreme Court had "entertained cases brought by private litigants to enforce § 2." *Id.* at 232 (quoting S. Rep. No. 97-417, at 30). Justice Breyer, joined by Justices O'Connor and Souter, concurred based on the same reasoning, declaring that "Congress intended to establish a private right of action to enforce § 10, no less than it did to enforce §§ 2 and 5." *Id.* at 240. The conclusion that there is a private right of action under Section 2 is integral to *Morse*'s holding and therefore binding. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").

Consistent with the interpretation of Section 2 in *Morse*, the Supreme Court entertained and ruled in favor of private litigants on their Section 2 claim last year in *Allen v. Milligan*, 599 U.S. 1 (2023). The Supreme Court has adjudicated other private claims under Section 2. *See League of United Latin Am. Citizens v. Perry (LULAC)*, 548 U.S. 399 (2006); *Voinovich v. Quilter*, 507 U.S. 146 (1993); *Houston Laws.' Ass'n v. Att'y Gen.*, 501 U.S. 419 (1991); *Chisom v. Roemer*, 501 U.S. 380 (1991); *Thornburg v. Gingles*, 478 U.S. 30 (1986). The Fifth, Sixth and Eleventh Circuits have held that Section 2 conveys a private right of action. *See Robinson v.*

*Ardoin*, 86 F.4th 574, 587-88 (5th Cir. 2023); *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999); *Alabama State Conf. of NAACP v. Alabama*, 949 F.3d 647, 652 (11th Cir. 2020), *cert. granted, op. vacated, and case dismissed as moot*, 141 S. Ct. 2618 (2021). The Third Circuit and courts within this Circuit have addressed private claims under Section 2. *See Page v. Bartels*, 248 F.3d 175 (3d Cir. 2001); *Jenkins v. Manning*, 116 F.3d 685 (3d Cir. 1997); *Guy v. State of Del.*, No. 00-831, 2003 WL 22005853 (D. Del. Aug. 20, 2003); *Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh, Pa.*, 686 F. Supp. 97 (W.D. Pa. 1988).

HASD ignores *Morse*[1] and urges the Court to depart from decades of VRA litigation and deny a private right of action based on the divided Eighth Circuit decision in *Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023), *reh'g denied*, 91 F.4th 967 (8th Cir. 2024). The Eighth Circuit, which previously recognized that individuals may be "aggrieved parties" for purposes of the VRA, *see, e.g., Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir. 1989), is the *only* circuit to have denied private plaintiffs the right to sue under Section 2. The better reasoned analysis which recognizes *Morse* and comports with

---

[1]    HASD argues that cases assuming the existence of a private action "*sub silentio*" are not binding. (HASD Br. at 5.) But a majority of Justices concluded there is a private right of action in *Morse*. This binding authority cannot be denied out of hope that a majority of the current Supreme Court might rule differently. *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) ("[O]nly this Court may overrule one of its precedents.").

the weight of authority is contained in the dissent in *Arkansas State Conf.*  In his dissent, Chief Judge Smith reasoned as follows:

> [T]he simple fact is that a majority of the justices explicitly recognized a private right of action under Section 2 in *Morse.*  While that private right has been called into question by two [current] Supreme Court justices, the Supreme Court has yet to overrule itself on that precise issue. . . . Until the Supreme Court instructs otherwise, I would hold that § 2 contains an implied private right of action.

86 F.4th at 1223-24 (internal citations, punctuation and footnote omitted).  This reasoning is correct.  This Court should adhere to *Morse* and other decisions recognizing a private action.

### B.    The VRA's text, structure and legislative history require recognition of a private right of action.

A statute may be enforced through a private cause of action if the statute "manifests an intent 'to create not just a private *right* but also a private *remedy.*'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  Section 2 easily satisfies this test.

Section 2 expressly creates a private right by prohibiting voting practices that "result[] in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color."  52 U.S.C. § 10301(a).  Two other VRA provisions—Sections 3 and 14(e)—create private remedies.  Section 3, which is titled "Proceeding to enforce the right to vote," provides for relief in "proceeding[s]"

7

brought by "the Attorney General or an aggrieved person" "to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a).[2] Section 14 allows for recovery of attorneys' fees by a "prevailing party, other than the United States," "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10310(e). Allowing a "prevailing party" to recover fees is conclusive proof of intent to allow private actions. *Morse*, 517 U.S. at 234 ("Obviously, a private litigant is not the United States, and the Attorney General does not collect attorney's fees."). These explicit references to a private right and private remedies require recognition of a private cause of action.

The VRA's legislative history also supports a private right of action. *See* H.R. Rep. No. 97-227, at 32 (1981) ("It is intended that citizens have a private cause of action to enforce their rights under Section 2,"); *id.* at 45 ("An aggrieved party is defined broadly to include any person who would have standing under the law."); S. Rep. No. 97-417, at 30 (1982) ("[T]he Committee [on the Judiciary] reiterates the existence of the private right of action under Section 2, as has been clearly intended by Congress since 1965."); S. Rep. No. 94-295, at 39-40 (1975) (proposing to amend

---

[2]    Congress amended Section 3 to confer standing on "aggrieved persons" in 1975, *Morse*, 517 U.S. at 233, which was after the Supreme Court construed VRA Section 5 as permitting private suits in *Allen v. State Bd. of Elections*, 393 U.S. 544, 557 (1969). This sequence further supports finding a private right of action in Section 2 consistent with the prior construction canon. *See infra* p. 9.

Section 3 "to afford to private parties the same remedies which Section 3 [previously afforded] only to the Attorney General"); *id.* at 40 ("Congress depends heavily upon private citizens to enforce the fundamental [voting] rights involved."). When Congress reauthorized the VRA in 2006, Public Law 109-246, 120 Stat. 577, it was aware of *Morse* and other cases brought by private plaintiffs and is presumed to have ratified private enforcement under the prior-construction canon. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536-37 (2015) (Congress's decision to amend statute without altering text is "convincing support" for previous judicial construction).

**C.    Section 2 is enforceable through 42 U.S.C. § 1983.**

While recognition of a private right of action is necessary to give effect to Congress's clear intent, it is not necessary to Plaintiffs' VRA claim because Section 2 is also enforceable through 42 U.S.C. § 1983. *See Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (Section 1983 "undoubtedly embraces" and "broadly encompasses" suits by private plaintiffs to enforce "federal statutory as well as constitutional law"). HASD did not move to dismiss Plaintiffs' Section 2 claim brought under Section 1983. Because Section 2 unquestionably confers an individual right to vote free of discrimination, that right is "presumptively enforceable by § 1983." *Gonzaga*, 536 U.S. at 284. HASD's motion to dismiss Plaintiffs' Section 2 claim should be denied for this alternative reason. *See Coca v. City of Dodge City*, 669 F. Supp. 3d 1131,

11442 (D. Kan. 2023) ("Plaintiffs may alternatively assert a Section 2 claim under § 1983"); *Turtle Mountain Band of Chippewa Indians v. Jaeger*, No. 3:22-CV-22, 2022 WL 2528256, at *5 (D.N.D. July 7, 2022) (denying motion to dismiss Section 2 claim brought under Section 1983).

## II.    The Complaint Sufficiently Pleads a Violation of Section 2.

HASD contends that Plaintiffs do not allege their Section 2 claim with "credible specificity" and should be denied leave to amend based on HASD's unsupported view that Hispanic candidates lose because of "partisan politics," not race. (HASD Br. at 6-12.) These arguments fail as a matter of both law and fact.

To state a claim under Section 2, a plaintiff must allege that: (1) the minority group at issue "is sufficiently large and geographically compact to constitute a majority in a single member district"; (2) the minority group is "politically cohesive"; and (3) "the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 50-51. HASD protests that Plaintiffs have not adequately pled the second and third *Gingles* factors, (HASD Br. at 7), but does not identify any missing facts arguably necessary to either factor. A fair reading of the Complaint leaves no doubt that Plaintiffs have met their pleading burden.

With respect to the second *Gingles* factor—political cohesiveness—the Complaint alleges that the Hispanic population in the HASD has grown substantially

over the past three decades, (Compl. ¶¶ 8-9, 11), that Hispanics make up a majority of the voting age population in and around the City of Hazleton, (*id.* ¶¶ 10-12), that Hispanic-preferred candidates have been among the top vote-getters in Hispanic precincts, (*id.* ¶ 12), and that Hispanic candidates have been unsuccessful in primary and general elections for HASB despite the preference of Hispanic voters (*id.* ¶¶ 12, 23, 25). These allegations, accepted as true, support a plausible inference that Hispanic voters in Hazleton tend to vote the same way and are politically cohesive. *See, e.g., Coca*, 669 F. Supp. 3d at 1144 (allegation that "Latino-preferred candidates. . . reap[ed] a majority vote in high-density Latino precincts . . ." "plausibly alleged that the Latino population votes cohesively"); *League of United Latin Am. Citizens v. Abbott*, No. 1:21-CV-991, 2022 WL 174525, at *2 (W.D. Tex. Jan.18, 2022) ("[A] showing that a group tends to vote the same way is sufficient to satisfy the second *Gingles* condition."); *Luna v. County of Kern*, No. 1:16-CV-568, 2016 WL 4679723, at *6 (E.D. Cal. Sept. 6, 2016) (plaintiffs not required to "identif[y] . . . specific Latino-preferred candidates and whether those candidates were defeated by a bloc-voting majority" for second *Gingles* factor).

Regarding the third *Gingles* factor—the existence of white bloc voting—the Complaint alleges that "[v]oting in school board and other elections in the HASD is racially polarized." (Compl. ¶ 24.) As support, the Complaint alleges that, "[d]espite the substantial Hispanic population in the HASD and the political

cohesion among Hispanic voters, Hispanic candidates preferred by Hispanic voters have consistently lost in elections for seats on the HASB and other local elections." (*Id.* ¶ 23.) The Complaint also alleges that all HASB members are White (*id.* ¶ 25), that "[n]o Hispanic has ever been elected to the HASB," (*id.* ¶ 26), and that "[n]o Hispanic candidate has ever been elected to a local or state position that represents all of HASD" or "to fill any federal office representing all of HASD," (*id.* ¶ 27), notwithstanding the expanding Hispanic population and despite Hispanics making up the majority of the voting age population in and around Hazleton, (*id.* ¶¶ 8-9, 12). The Complaint further alleges that "[t]he White population of the HASD votes sufficiently as a bloc to usually defeat the preferred candidates of Hispanic voters." (*Id.* ¶ 22). Accepting these allegations as true, the Complaint sufficiently pleads racial polarization satisfying the third *Gingles* factor. *See, e.g.*, *League of United Latin Am. Citizens*, 2022 WL 174525 at *3 (allegation that "non-Hispanic whites . . . vote . . . against . . . candidates [] who are preferred by the large majority of blacks and Hispanics" satisfies third *Gingles* factor); *Luna*, 2016 WL 4679723, at **5-6 (allegation that Latinos have not been elected outside district where they make up majority sufficient for third *Gingles* factor); *Alabama State Conf. of NAACP v. City of Pleasant Grove*, 372 F. Supp. 3d 1333, 1340 (N.D. Ala. 2019) (concluding that plaintiffs adequately pleaded *Gingles* factors by alleging that Black candidates repeatedly lost to White candidates in racially polarized elections); *Hall v.*

*Louisiana*, 974 F. Supp. 2d 978, 992 (M.D. La. 2013) (allegation that "White voters . . . vote sufficiently as a bloc to enable them . . . to defeat the Black voter's preferred candidates" sufficient for Section 2 claim); *Tigrett v. Cooper*, 855 F. Supp. 2d 733, 763 (W.D. Tenn. 2012) ("Plaintiffs' reliance on general population statistics . . . does not merit dismissal").

In denying the sufficiency of these allegations and demanding "credible specificity," (HASD Br. at 7, 11), HASD advocates for a heightened pleading standard inconsistent with Rule 8 and *Twombly*. Contrary to HASD's argument, plaintiffs need not plead specific facts or make a probability showing in a complaint. *See Erikson v. Pardus*, 551 U.S. 89, 93 (2007) ("[S]pecific facts are not necessary. . . ."); *Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics . . . ."); *id.* at 556 ("Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage . . . "). Nor are district courts permitted to make credibility assessments at the pleading stage. *Id.* at 556 ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) ("courts cannot inject evidentiary issues into the plausibility determination") (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Rather, Plaintiffs' allegations must be accepted as true and construed in the light most

favorable to them. *Phillips*, 515 F.3d at 228. Plaintiffs' Complaint suffices under the applicable standard.

HASD also incorrectly posits that Plaintiffs must affirmatively disprove the impact of "partisan politics" to state a Section 2 claim. (HASD Br. at 8.) While evidence attempting to explain voters' choices may be offered by the defense during the "fact-intensive" totality of the circumstances stage, causation and intent are not relevant to the *Gingles* preconditions. *See Gingles*, 478 U.S. at 62-63 (Brennan, J., plurality opinion) ("For purposes of § 2, the legal concept of racially polarized voting incorporates neither causation nor intent."); *id.* at 63 ("[T]he reasons [minority] and white voters vote differently have no relevance to the central inquiry of § 2."); *id.* at 100 (O'Connor, J., concurring) ("[D]efendants cannot rebut [a showing of polarized voting] by offering evidence that the divergent racial voting patterns may be explained in part by causes other than race."). Federal courts have declined to require plaintiffs to preemptively negate partisanship or other variables as potential causes of polarized voting at the pleading stage. *See Old Person v. Cooney*, 230 F.3d 1113, 1128 (9th Cir. 2000); *United States v. Charleston Cnty., S.C.*, 365 F.3d 341, 348 (4th Cir. 2004); *Goosby v. Town Bd of Hempstead, N.Y.*, 180 F.3d 476, 493 (2d Cir.1999); *Teague v. Attala Cnty., Miss.*, 92 F.3d 283, 290 (5th Cir. 1996); *Uno v. City of Holyoke*, 72 F.3d 973, 983 (1st Cir. 1995); *Milwaukee Branch of NAACP v. Thompson*, 116 F.3d 1194, 1199 (7th Cir. 1997); *Sanchez v. Colorado*, 97 F.3d

14

1303, 1313 (10th Cir.1996); *Nipper v. Smith,* 39 F.3d 1494, 1524–25 & n.60 (11th Cir.1994) (*en banc*).[3]  HASD's argument thus fails for the simple reason that plaintiffs are not required to plead around potential defenses. *See Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9 (2017) (plaintiff not required to "anticipate and negate [potential affirmative defense] in her pleading"); *In re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) ("[A]n affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6).").[4]

HASD also invites error in asking the Court to take judicial notice of last year's primary election results and to infer that Hispanic-preferred candidates for HASB lose at the polls because of politics, not race. (HASD Br. at 11-12.)  Even if

---

[3]  Even the case cited by HASD in support of its "party politics" assumption recognizes that summary dismissal of vote dilution claims based on assumed party affiliation is generally inappropriate. *See League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 860-61 (5th Cir. 1993) (acknowledging that "partisan affiliation may serve as a proxy for illegitimate racial discrimination" and "courts should not summarily dismiss vote dilution claims in cases where racially divergent voting patterns correspond with partisan affiliation").

[4]  Plaintiffs will offer statistical analyses and expert testimony at trial. *See, e.g., Gingles*, 478 U.S. at 41 (racially polarized voting proven by "statistical evidence presented by expert witnesses").  The common reliance on expert testimony in Section 2 cases is appropriately considered in ruling on HASD's motion. *Iqbal*, 556 U.S. at 679 (determining whether complaint states plausible claim is "context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

analysis of a VRA claim could be reduced this way—and it cannot[5]—raw election results say nothing about why particular voters voted the way they did. Accordingly, the reasons for candidate losses are not susceptible to proof through judicial notice of election results. *See* Fed. R. Evid. 201(b)(2) (only indisputable facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" can be judicially noticed); *American Trucking Ass'n, Inc. v. Larson*, 683 F.2d 787, 797 (3d Cir. 1982) (report not subject to judicial notice "when the inferences and conclusions to be derived from its statements are subject to dispute"); *County of Monmouth v. Rite Aid Corp.*, No. 20-CV-2024, 2023 WL 2743921, at *4 (E.D. Pa. Mar. 31, 2023) (declining to allow party to "create a narrative" out of judicially-noticed documents); *Travelers Cas. & Surety Co. v. Falkowski*, No. 15-6737, 2021 WL 2355915, at *2 (E.D. Pa. June 9, 2021) ("To the extent that a party asks for judicial notice of facts gleaned from these documents, courts have declined to do so.") (citation and internal quotation marks omitted). Moreover, a complaint cannot be dismissed based on "inferences *against* the non-moving party" drawn

---

[5] HASD provides no support for its assertion that a single primary election without corresponding demographic information can by itself disprove racially polarized voting. (HASD Br. at 9-12.) And there is none.  Section 2 requires consideration of the "totality of the circumstances" to determine whether members of a racial group have less opportunity than other members of the electorate to elect representatives of their choice. 52 U.S.C. § 10301(b).  This inquiry involves a "searching practical evaluation of the past and present reality" of an electoral system that is "fact-intensive" and "functional" in nature. *Gingles*, 478 U.S. at 45-46.

from documents offered for judicial notice by the movant. *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) (reversing 12(b)(6) dismissal where district court took judicial notice of disputed facts and drew inferences therefrom in favor of defendant).

Put simply, HASD cannot duck this Court's Section 2 analysis by demanding detailed facts or inferences in furtherance of anticipated factual defenses. Plaintiffs have sufficiently pled vote dilution in violation of Section 2 and HASD's motion should be denied. *See Rose v. Raffensperger*, 511 F. Supp. 3d 1340, 1360 (N.D. Ga. 2021) ("[T]he *Gingles* factors present mixed questions of law and fact. This makes it particularly inappropriate to foreclose at the pleading stage Plaintiffs' opportunity to prove their claims.") (internal citation omitted).

## III.   The Complaint Sufficiently Pleads a Violation of the Fourteenth Amendment.

HASD misconstrues the Complaint and controlling law in arguing that Plaintiffs allege only disparate impact which is insufficient to state a claim under the Fourteenth Amendment. (HASD Br. at 12-14.) The Complaint alleges facts plausibly demonstrating that HASD purposefully maintains the at-large system to dilute the voting strength of Hispanics in violation of the equal protection guarantee. This is sufficient to state a claim under the Fourteenth Amendment.

The Supreme Court has held that at-large election systems "violate the Fourteenth Amendment if 'conceived or operated as purposeful devices to further

racial discrimination' by minimizing, cancelling out or diluting the voting strength of racial elements in the voting population." *Rogers v. Lodge*, 458 U.S. 613, 617 (1982) (quoting *Whitcomb v. Chavis*, 403 U.S. 124, 149 (1971)).  A plaintiff alleging a violation of the Equal Protection guarantee in the Fourteenth Amendment is not required to show "the challenged action rested solely on racially discriminatory purposes," but rather that race was "a motivating factor."  *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-266 (1977).  This requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266.  Relevant considerations include: the discriminatory impact of the challenged practice, *Rogers*, 458 U.S. at 618; foreseeability of the discriminatory impact, *Columbus Bd. of Ed. v. Penick*, 443 U.S. 449, 464-66 (1979); and the historical background of the challenged practice, *Village of Arlington*, 429 U.S. at 267.

Here, there is no doubt that the Complaint sufficiently alleges that racial discrimination motivates HASD's maintenance and operation of the at-large voting system.  The Complaint details the significant growth in the Hispanic population and Hispanic candidates' lack of success at the polls due to racially polarized voting. (Compl. ¶¶ 8-27.)  Despite the Hispanic community making up nearly 40% of the HASD and 65% of the HASD student body, no Hispanic candidate has ever been elected to the HASB.  (*Id.* ¶¶ 8, 13, 25, 26.)  The allegations of bloc voting along

racial lines and the disproportionate impact of the at-large system on Hispanics are sufficient to show that the at-large election scheme is operated as a purposeful device to further race discrimination. *See Columbus Bd. of Ed.*, 443 U.S. at 454 ("[A]ctions having foreseeable and anticipated disparate impact are relevant evidence to prove the ultimate fact, forbidden purpose."); *Village of Arlington Heights*, 429 U.S. at 266 ("Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face.").

In addition, the Complaint alleges that HASD has failed to remedy disparate student discipline, failed to adequately staff English-as-a-Second-Language programs, failed to hire sufficient translators, failed to implement effective communication channels with Hispanic parents, and implemented student registration procedures based on unfair stereotypes. (Compl. ¶ 34.) These allegations fit squarely into the larger pattern of discrimination aimed at Hispanics living in the HASD. Plaintiffs allege that Hispanics in the HASD have been targeted by law enforcement, blamed for rising crime rates, denied language assistance by municipal officials, and subjected to discriminatory legislation. (*Id.* ¶ 30.) By denying Hispanics equal opportunity to elect representatives of their choice to the HASB, the system perpetuates and exacerbates discrimination against the Hispanic community. These allegations of intentional discrimination against Hispanics amply

support the inference that HASD is maintaining the at-large election system with discriminatory intent. *See Rogers*, 458 U.S. at 622 (affirming finding that county violated Fourteenth Amendment by maintaining at-large election system "for the invidious purpose of diluting the voting strength of the [minority] population").

These allegations—which HASD ignores and which must be accepted as true—are more than sufficient to state a plausible claim that HASD is maintaining the at-large election system "as [a] purposeful device[] to further racial discrimination" in violation of the Fourteenth Amendment. *Rogers*, 458 U.S. at 617 (citation and internal quotation marks omitted). HASD's motion to dismiss Plaintiffs' equal protection claim should be denied.

## CONCLUSION

For the foregoing reasons, HASD's motion to dismiss should be denied. Alternatively, Plaintiffs should be granted leave to amend. *Phillips*, 515 F.3d at 236 ("[I]f a complaint is vulnerable to a 12(b)(6) dismissal, a district court must permit

a curative amendment, unless an amendment would be inequitable or futile.").

Date: April 24, 2024                    Respectfully submitted:

/s/ Daniel T. Brier                     /s/ Chad Dunn
Daniel T. Brier                         Chad Dunn (*pro hac vice*)
Patrick J. Brier                        Bernadette Reyes (*pro hac vice*)
Donna A. Walsh                          Sonni Waknin (*pro hac vice*)
Timothy E. Gates                        UCLA Voting Rights Project
Richard L. Armezzani                    3250 Public Affairs Building
Myers, Brier & Kelly, LLP               Los Angeles, CA 90020
425 Biden Street, Suite 200             (310) 400-6019
Scranton, PA 18503
(570) 342-6100


/s/ Peter D. Winebrake                  /s/ Frederick P. Rooney
Peter D. Winebrake                      Frederick P. Rooney
Winebrake & Santillo, LLC               7 West Morton Street
715 Twining Road, Suite 211             Bethlehem, PA 18105
Dresher, PA 19025                       (484) 554-4492
(215) 884-2491

*Attorneys for Plaintiffs, Aleida Aquino and Brendalis Lopez*

## **CERTIFICATE OF WORD COUNT**

I certify that, according to the word-counting feature of Microsoft Word, the attached brief includes 4981 words and therefore complies with the word-count limit set forth in Local Rule 7.8(b).

/s/ Daniel T. Brier
Daniel T. Brier

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Memorandum of Law in Opposition to Motion To Dismiss was served upon the

following counsel of record via the Court's ECF filing system on this 24th day of

April 2024:

> Eric A. Fitzgerald, Esquire
> McAngus, Goudelock & Courie, LLC
> 2000 Market Street, Suite 780
> Philadelphia, PA 19103

> /s/ Daniel T. Brier
> Daniel T. Brier