## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALEIDA AQUINO and BRENDALIS LOPEZ,

*Plaintiffs*,

*v.*

HAZLETON AREA SCHOOL DISTRICT,

*Defendant*.

Civil Action No. 3:24-cv-206-KM

## <u>STATEMENT OF INTEREST OF THE UNITED STATES</u>

# TABLE OF CONTENTS

I.     BACKGROUND ................................................................................1

II.    QUESTIONS PRESENTED ............................................................2

III.   ARGUMENT.....................................................................................2

   A.  Private plaintiffs can sue to enforce Section 2 of the Voting Rights Act. ........3

      1.   Section 2 creates privately enforceable personal rights. .............................3

      2.   Congress provided a private remedy to enforce Section 2...........................4

      3.   Judicial precedent, which Congress has ratified, has recognized private
           plaintiffs' ability to enforce Section 2. ........................................................7

   B.   Private Plaintiffs Can Enforce Section 2 Through 42 U.S.C. § 1983. ........12

IV.   CONCLUSION .........................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Ala. State Conf. of NAACP v. Ala.*, 949 F.3d 647 (11th Cir. 2020) ............................8

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ..............................................5

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969) ................................ 5, 8, 10, 15

*Alpha Phi Alpha Fraternity, Inc v. Raffensperger*, 587 F. Supp. 3d 1222 (N.D. Ga. 2022) ............................................................................10

*Ark. State Conf. NAACP v. Ark. Bd. of Reapportionment*, 91 F.4th 967 (8th Cir. 2024) ............................................................................12

*Ark. State Conf. of the NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023) ............................................................... 2, 3, 12

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021) ..................................9

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) ..........................................5

*Chisom v. Roemer*, 501 U.S. 380 (1991) ....................................................4

*City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005) ......................15

*Coca v. City of Dodge City*, No. 22-1274-EFM, 2023 WL 2987708 (D. Kan. Apr. 18, 2023) ............................................................................9

*Coca v. City of Dodge City*, No. 22-1274-EFM, 2023 WL 3948472 (D. Kan. June 12, 2023) ............................................................................9

*Dennis v. Higgins*, 498 U.S. 439 (1991) ..................................................12

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) ....................................11

*Ga. State Conf. of NAACP v. Georgia*, 1:21-CV-5338-ELB-SCJ-SDG, 2022 WL 18780945 (N.D. Ga. Sept. 26, 2022) ....................................................10

*Ga. State Conf. of NAACP v. Georgia*, 269 F. Supp. 3d 1266 (N.D. Ga. 2017) 9, 10, 13

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)............................................ 2, 12, 14, 16

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023).... 4, 13, 15

*League of United Latin Am. Citizens v. Abbott*, EP-21-CV-00259-DCG-JES-JVB, 2021 WL 5762035 (W.D. Tex. Dec. 3, 2021) ..........................................9

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) ..............................................12

*Maine v. Thiboutot*, 448 U.S. 1 (1980) ....................................................12

*Marks v. United States*, 430 U.S. 188 (1977) ............................................7

*Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022)..........................................14

*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) ............................................8

*Morse v. Republican Party of Va.*, 517 U.S. 186 (1996)................................ 7, 8, 10

*Nat'l Ass'n for Advancement of Colored People v. Med. Ctr., Inc.*, 599 F.2d 1247 (3d Cir. 1979)...........................................................................7

*Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400 (1968) (per curiam) ................7

*Pa. State Conf. of NAACP Branches v. Sec'y Cmwlth. of Pa.*, 97 F.4th 120 (3d Cir. 2024) ....................................................................................14

*Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348 (E.D. Va. 2009) ........................9

*Robinson v. Ardoin*, 86 F.4th 574 (5th Cir. 2023) ......................................9

*Robinson v. Ardoin*, No. 22-30333, Ord. Denying Pet. for Reh'g En Banc (5th Cir. Dec. 15, 2023)..............................................................................9

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) .............................. 14, 15

*Shelby Cnty. v. Holder*, 570 U.S. 529 (2013)..........................................13

*Shelby Cnty. v. Lynch*, 799 F.3d 1173 (D.C. Cir. 2015) ..............................6

*Singleton v. Merrill*, 582 F. Supp. 3d  924 (N.D. Ala. 2022) ....................................10

*Stone v. Allen*, 2:21-cv-01531, 2024 WL 578578 (N.D. Ala. Feb. 13, 2024)............9

*Thornburg v.  Gingles*, 478 U.S. 30 (1986)................................................................11

*Turtle Mountain Band of Chippewa Indians v. Jaeger*, 3:22-cv-22-PDW-ARS, 2022 WL 2528256 (D.N.D. July 7, 2022) ..................................................... 13, 16

*Turtle Mountain*, 3:22-cv-22, 2023 WL 8602898 (D.N.D. Dec. 12, 2023).............16

*United States v. Raines*, 362 U.S. 17 (1960) .................................................................5

*Veasey v. Perry*, 29 F. Supp. 3d 896 (S.D. Tex. 2014) .................................................9

*Vote.org v. Paxton*, 89 F.4th 459 (5th Cir. 2023)........................................................14

*Winnebago Tribe of Neb. v. Thurston Cnty.*, 8:23-cv-20, 2024 WL 302390 (D. Neb. Jan. 26, 2024) ......................................................................................................16

**Statutes**

28 U.S.C. § 517 ............................................................................................................1

52 U.S.C. § 10101(a)(2)(B) ........................................................................................14

52 U.S.C. § 10301 .....................................................................................................1, 4

52 U.S.C. § 10302 ....................................................................................................6, 13

52 U.S.C. § 10303(f)(2) ................................................................................................4

52 U.S.C. § 10308(d) ....................................................................................................1

52 U.S.C. § 10308(f) .....................................................................................................5

52 U.S.C. § 10310(e) .....................................................................................................6

Pub. L. No. 109-246, 120 Stat. 577 (2006)................................................................11

Pub. L. No. 91-285, 84 Stat. 14 (1970)......................................................................11

iv

Pub. L. No. 94-73, § 401, 89 Stat. 404 (1975)......................................................6, 11

Pub. L. No. 97-205, 96 Stat. 131 (1982).......................................................................11

**Other Authorities**

Cases Raising Claims Under Section 2 Of The Voting Rights Act, Voting Section
    Litigation, U.S. Dep't of Justice (Apr. 30, 2024),
    https://www.justice.gov/crt/voting-section-litigation#sec2cases. ........................10

Ellen D. Katz et al., To Participate and Elect: Section 2 of the Voting Rights Act at
    40, Univ. Mich. L. Sch. Voting Rights Initiative (2022),
    https://voting.law.umich.edu. ..................................................................................10

H.R. Rep. No. 196, 94th Cong., 1st Sess. 9 (1975) ...................................................11

H.R. Rep. No. 397, 91st Cong., 1st Sess. 4, 8 (1969)...............................................11

S. Rep. No. 295, 94th Cong., 1st Sess. 40 (1975)..................................................6, 11

S. Rep. No. 417, 97th Cong., 2d Sess. (1982) ..........................................................11

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."  This case presents important questions about enforcement of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.  Congress has vested the Attorney General with authority to enforce Section 2 on behalf of the United States.  *See* 52 U.S.C. § 10308(d).  Accordingly, this Statement of Interest addresses the availability of a private right of action to enforce Section 2.[1]

## I.    BACKGROUND

Aleida Aquino and Brendalis Lopez, two individual voters, sued the Hazleton Area School District ("HASD") under Section 2 of the Voting Rights Act and the Fourteenth Amendment.  ECF No. 1 ¶¶ 1, 36-45.  They allege that the at-large method of election for its nine-member board of directors results in impermissible vote dilution for Hispanic voters.  *Id*. ¶ 19.  Aquino and Lopez sued under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and, importantly here, under 42 U.S.C. § 1983.  *Id*. at 8-9.  In moving to dismiss the complaint, the HASD argues, in part, that Section 2 does not provide a private right of action.  ECF No. 22 at 4-6, citing a single decision from the Eighth Circuit.  *See Ark. State*

---

[1] The brief expresses no view on the merits of any claim, nor any issues other than those set forth in this brief.

*Conf. of the NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023).

On April 24, 2024, Aquino and Lopez responded.

## II.   QUESTIONS PRESENTED

1. Whether Section 2 of the Voting Rights Act provides a private right of action.

**Suggested Answer:**  Affirmative.

2. Whether Section 2 of the Voting Rights Act is privately enforceable under 42 U.S.C. § 1983.

**Suggested Answer:**  Affirmative.

## III.   ARGUMENT

Plaintiffs seeking to vindicate their rights under statutes that lack express causes of action can proceed either through an implied private right of action from the substantive statute or under Section 1983.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-284 (2002).  These two paths "overlap in one meaningful respect . . . we must first determine whether Congress *intended to create a federal right*."  *Id*. at 283.  The two paths differ at the second step of the analysis: a "plaintiff suing under an implied right of action still must show that the statute manifests an intent to 'create not just a private *right* but also a private *remedy*.'"  *Id*. at 284 (citation omitted).  But "[p]laintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes."  *Id*. (citation omitted).

Aquino and Lopez can enforce Section 2 against the HASD under both theories. The HASD's mistaken reading of Section 2's private right of action rests entirely on a recent out-of-circuit decision upholding the dismissal of private plaintiffs' challenge to Arkansas' state redistricting plan, on the theory that private plaintiffs cannot enforce Section 2. *Ark. State Conf. NAACP*, 86 F.4th at 1217-18. The Eighth Circuit decision is a legally erroneous outlier that gives scant attention to statutory text and decades of case law uniformly holding that private plaintiffs can enforce Section 2. On this basis alone, this Court should reject the HASD's private-right-of-action argument. Even if Section 2 did not contain a private right of action—which it does—the statute is enforceable through Section 1983, which the HASD does not address.[2]

### A. Private plaintiffs can sue to enforce Section 2 of the Voting Rights Act.

#### 1. Section 2 creates privately enforceable personal rights.

A statute contains rights-creating language "where the provision in question is phrased in terms of the persons benefited and contains rights-creating, individual-centric language with an unmistakable focus on the benefited class."

---

[2] Because Defendants have not raised an argument about Section 1983 in their motion, the issue has been waived. Nevertheless, the United States will address in this brief why private plaintiffs can pursue a Section 2 claim pursuant to Section 1983.

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023)

(internal quotation marks omitted) (quoting *Gonzaga*, 536 U.S. at 284, 287).

Section 2 provides:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of *the right of any citizen* . . . to vote on account of race or color.

52 U.S.C. § 10301(a) (emphasis added); *see also* 52 U.S.C. § 10303(f)(2)

(extending rights to language minority groups).  Section 2 thus "grants" individual

citizens "a right to be free from" discriminatory voting practices.  *Chisom v.

Roemer*, 501 U.S. 380, 392 (1991) (internal quotation marks omitted) (citation

omitted); *see also Talevski*, 599 U.S. at 184 (finding that statute "framing" relevant

section in terms of rights is "indicative of an individual rights-creating focus")

(internal quotation marks omitted).  The VRA requires that States and political

subdivisions refrain from "impos[ing] or apply[ing]" such practices, 52 U.S.C. §

10301(a), and defines the "benefited class"—citizens.  *Talevski*, 599 U.S. at 183

(internal quotation marks omitted) (citation omitted).  Because Section 2 creates

private rights, private plaintiffs can enforce it if Congress intended to create a

private remedy.

### 2.    Congress provided a private remedy to enforce Section 2.

The text of Section 2 and other provisions of the VRA show Congress's

intent to provide a private remedy for violations.  That Section 2 contains rights-

creating language creates a strong presumption that Congress also intended to create a private remedy to enforce those rights because "the right- or duty-creating language of [a] statute has generally been the most accurate indicator of the propriety of implication of a cause of action." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.13 (1979); *see also Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) (characterizing this component of the private-right-of-action analysis as "critical").

This sound presumption that Congress intended to provide a private remedy is even more convincing in a Section 2 case. This is because voting rights are considered "private rights," enforced by individual voters. *United States v. Raines*, 362 U.S. 17, 27 (1960). The Supreme Court has found "merit in the argument that the specific references [in the VRA] to the Attorney General were included to give the Attorney General power to bring suit to enforce what might otherwise be viewed as 'private' rights." *Allen v. State Bd. of Elections*, 393 U.S. 544, 555 n.18 (1969) (quoting *Raines*, 362 U.S. at 27).

Congress's intent to provide a private remedy to enforce Section 2 can be understood from several provisions of the VRA. Section 12(f), for example, gives federal courts subject-matter jurisdiction over suits brought by "*a person asserting rights* under the provisions of [the VRA]." 52 U.S.C. § 10308(f) (emphasis added); *see also Allen*, 393 U.S. at 555 n.18 ("force" to argument that Section 12(f)

"necessarily implies that private parties may bring suit under the [VRA]").  Section 3 authorizes some remedies in actions brought by "the Attorney General *or an aggrieved person* . . . under *any* statute to enforce the voting guarantees of the fourteenth or fifteenth amendment."  52 U.S.C. § 10302(a), (c) (emphases added).  Congress added the term "aggrieved person" to Section 3 when it amended the VRA in 1975.  Pub. L. No. 94-73, § 401, 89 Stat. 404.  At the time, Congress knew *Allen* had interpreted the VRA to permit private suits, 393 U.S. at 556-557; S. Rep. No. 295, 94th Cong., 1st Sess. 40 (1975) (1975 Senate Report) (stating that an "aggrieved person" includes "an individual or an organization representing the interests of injured persons").

Similarly, Section 14(e), which Congress also added in 1975, allows "the prevailing party, *other than the United States*" to seek attorney's fees "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment."  52 U.S.C. § 10310(e) (emphasis added).  That fees are available indicates that causes of actions are available to any party seeking to enforce the VRA's core provisions.  *Shelby Cnty. v. Lynch*, 799 F.3d 1173, 1185 (D.C. Cir. 2015).  ("Congress intended for courts to award fees under the [VRA] . . . when prevailing parties helped secure compliance with the statute.").  The Supreme Court construed a nearly identical fees provision in Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(b), to allow private plaintiffs to recover attorney's

6

fees whenever they secure a legal victory. *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (per curiam).

### 3. Judicial precedent, which Congress has ratified, has recognized private plaintiffs' ability to enforce Section 2.

Supreme Court and lower-court precedent also make clear that the VRA creates a private remedy for Section 2 violations. In *Allen*, the Court held that private litigants can enforce Section 5 of the VRA, 52 U.S.C. § 10304(a), which required covered jurisdictions to obtain preclearance before subjecting any "person" to a new voting qualification or procedure. *Allen*, 393 U.S. at 556-57; *Nat'l Ass'n for Advancement of Colored People v. Med. Ctr., Inc.*, 599 F.2d 1247, 1251 n.11 (3d Cir. 1979) ("In *Allen*, of course, (the Supreme) Court implied a private right of action under the Voting Rights Act") (citation omitted).

Decades later, five Supreme Court justices recognized that although Section 2 "provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.'"[3] *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) (op. of Stevens, J., joined by Ginsburg, J.) (omission in original) (quoting 1982 Senate Rep. at 30); *accord id.* at

---

[3] Supreme Court decisions create binding holdings even "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices." *Marks v. United States*, 430 U.S. 188, 193 (1977). In *Morse*, five Justices shared the conclusion that a private right of action exists to enforce Sections 2 and 5 of the VRA, and that private plaintiffs can therefore enforce Section 10 of the VRA.

240 (op. of Breyer, J., concurring in the judgment, joined by O'Connor & Souter, JJ.). In *Morse*, the Court recognized an implied private right of action to enforce Section 10 of the VRA, 52 U.S.C. § 10306(a), which prohibits jurisdictions from conditioning the right to vote on payment of a poll tax. *Morse*, 517 U.S. at 232-34. The Court reasoned that private plaintiffs can enforce Section 10 because of a private right of action for Section 2: "It would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private actions but § 10 is not, when all lack the same express authorizing language." *Id*. at 232; *see also id.* at 240 (Breyer, J., concurring) (detailing how *Allen*'s rationale "applies with similar force not only to § 2 but also to § 10"). In both *Morse* and in *Allen*, the Court found it "significant" that the United States submitted briefs in support of a private right of action to enforce sections of the VRA. *Allen*, 393 U.S. at 557 n.23; *Morse*, 517 U.S. at 231 (explaining that *Allen* "attached significance" to the United States' brief there and that the United States submitted a brief advocating for the same result in *Morse*).

Since *Morse*, courts across the country have regularly held that Section 2 can be enforced by private plaintiffs.[4] For example, the Fifth Circuit has held "there is

---

[4] *See, e.g.*, *Ala. State Conf. of NAACP v. Ala.*, 949 F.3d 647, 651-52 (11th Cir. 2020), *cert. granted, judgment vacated as moot*, 141 S. Ct. 2618 (2021); *Mixon v. Ohio*, 193 F.3d 389, 406 & n.12 (6th Cir. 1999) ("An individual may bring a private cause of action under Section 2 of the [VRA]."); *League of United Latin Am. Citizens v. Abbott*, EP-21-CV-00259-DCG-JES-JVB, 2021 WL 5762035, at *1

a right" for private plaintiffs to bring a Section 2 challenge to Louisiana's congressional redistricting plan. *Robinson v. Ardoin*, 86 F.4th 574, 588 (5th Cir. 2023); *see also id.* No. 22-30333, Ord. Denying Pet. for Reh'g En Banc (5th Cir. Dec. 15, 2023). Similarly, a recent three-judge panel considering a Section 2 challenge to the Alabama State Senate redistricting plan declined to "ignore decades of controlling Section Two jurisprudence" and denied the defendants' motion to dismiss alleging that Section 2 did not provide a private right of action. *Stone v. Allen*, 2:21-cv-01531, 2024 WL 578578, at *6 (N.D. Ala. Feb. 13, 2024). Numerous recent decisions have affirmed that private plaintiffs can bring a private right of action under Section 2.[5] No other court has adopted the Eighth Circuit's reasoning.

---

(W.D. Tex. Dec. 3, 2021) (three-judge court) (denying a motion to dismiss arguing that Section 2 lacks a private right of action); *Ga. State Conf. of NAACP v. Georgia*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) (three-judge court) ("Section 2 contains an implied private right of action." (citing *Morse*, 517 U.S. at 232)); *Veasey v. Perry*, 29 F. Supp. 3d 896, 906 (S.D. Tex. 2014) ("individual voter[s]" and organizations have the "power to enforce" Section 2); *Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009), *aff'd* 333 F. App'x. 733 ("The [VRA] creates a private cause of action."). Although Justice Gorsuch recently suggested that "[l]ower courts have treated this as an open question," his concurring opinion relied solely on an out-of-circuit case that predated *Morse* and "[a]ssum[ed] without deciding" that Section 2 is privately enforceable. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring) (citing *Washington v. Finlay*, 664 F.2d 913, 926 (4th Cir. 1981)).

[5] *See, e.g., Coca v. City of Dodge City*, No. 22-1274-EFM, 2023 WL 2987708, at *3-5 (D. Kan. Apr. 18, 2023); *see also id.* 2023 WL 3948472 (June 12, 2023) (denying motion to certify interlocutory appeal); *Ga. State Conf. of NAACP v.*

The Court's reasoning in *Morse* and *Allen* strongly applies here against the HASD.  The Court explained how "[t]he achievement of the [VRA's] laudable goal" to "make the guarantees of the Fifteenth Amendment finally a reality for all citizens . . . could be severely hampered . . . if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General."  *Allen*, 393 U.S. at 556; *see also Morse*, 517 U.S. at 231-32.  The history of VRA enforcement actions confirms the Court's observations.  Since 1982, private plaintiffs have brought over an estimated 400 Section 2 cases.[6]  During that same period, the United States has brought about 44 cases.[7]

Congress has ratified the consensus that Section 2 is privately enforceable. "Congress is presumed to be aware of an administrative or judicial interpretation of

---

*Georgia*, 1:21-CV-5338-ELB-SCJ-SDG, 2022 WL 18780945, at *7 (N.D. Ga. Sept. 26, 2022) (three-judge court); *Alpha Phi Alpha Fraternity, Inc v. Raffensperger*, 587 F. Supp. 3d 1222, 1243, n.10 (N.D. Ga. 2022); *Singleton v. Merrill*, 582 F. Supp. 3d  924, 1031-1032 (N.D. Ala. 2022) (three-judge court) ("although the Supreme Court has not directly decided this question, it has decided a close cousin of a question, and that precedent strongly suggests that Section Two provides a private right of action"), *aff'd sub nom. Allen  v. Milligan*, 143 S. Ct. 1487 (2023) (not discussing the private right of action  question).

[6] Ellen D. Katz et al., To Participate and Elect: Section 2 of the Voting Rights Act at 40, Univ. Mich. L. Sch. Voting Rights Initiative (2022), https://voting.law.umich.edu.

[7] Cases Raising Claims Under Section 2 Of The Voting Rights Act, Voting Section Litigation, U.S. Dep't of Justice (Apr. 30, 2024), https://www.justice.gov/crt/voting-section-litigation#sec2cases.

a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-240 (2009) (internal quotation marks omitted) (citation omitted).  In fact, Congress "reiterate[d] the existence of the private right of action under section 2" in the 1982 Senate Report. S. Rep. No. 417, 97th Cong., 2d Sess. 30 (1982).  The Supreme Court has recognized this report as the "authoritative source for legislative intent" behind the amended Section 2.  *Thornburg v.  Gingles*, 478 U.S. 30, 43 n.7 (1986).  Congress amended the VRA four times after *Allen* and one time after *Morse*; at no point did Congress question the unanimous view that Section 2 is privately enforceable.  *See* Pub. L. No. 91-285, 84 Stat. 14 (1970); Pub. L. No. 94-73, 89 Stat. 400 (1975); Pub. L. No. 97-205, 96 Stat. 131 (1982); Pub. L. No. 109-246, 120 Stat. 577 (2006).  On the contrary, Congress has cited *Allen* with approval.  *See, e.g.*, S. Rep. No. 295, 94th Cong., 1st Sess. 16 (1975); H.R. Rep. No. 196, 94th Cong., 1st Sess. 9 (1975); H.R. Rep. No. 397, 91st Cong., 1st Sess. 4, 8 (1969).

Considering the VRA's rights-creating language, the Supreme Court's decisions in *Allen* and *Morse*, many lower-court decisions, and subsequent congressional ratification, the HASD's characterization that issues related to Section 2's enforceability have "passed *sub silentio*" is, at best, misleading.  ECF No. 22 at 5.

**B.      Private Plaintiffs Can Enforce Section 2 Through 42 U.S.C. § 1983.**

Even if private plaintiffs could not enforce Section 2 under an implied private right of action—though they can—they still can enforce Section 2 through Section 1983. Because Aquino and Lopez bring their Section 2 claim against HASD under Section 1983, *Arkansas State Conference of the NAACP* is of little import here. Indeed, the Eighth Circuit panel expressly left open whether Section 1983 provides an alternative avenue for private enforcement of Section 2. *Ark. State Conf. NAACP*, 86 F.4th at 1218; *Ark. State Conf. NAACP v. Ark. Bd. of Reapportionment*, 91 F.4th 967, 968 (8th Cir. 2024) (Stras, J., concurring in denial of rehearing en banc).

Section 1983 provides a general remedy for private plaintiffs to redress violations of federal rights by state actors. *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("the plain language" of Section 1983 "undoubtedly embraces" suits by private plaintiffs to enforce federal statutory rights); *see also Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994) (recognizing how "§ 1983 remains a generally and presumptively available remedy for claimed violations of federal law"); *Dennis v. Higgins*, 498 U.S. 439, 443 (1991). Under the test outlined in *Gonzaga*, a federal statute is "presumptively enforceable" under Section 1983 if it "unambiguously confer[s]" individual federal rights. 536 U.S. at 283-284. As explained *supra* in Section III-III.A.1, that standard is met if the statute in question "is 'phrased in

terms of the person benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'" *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 284, 287).

Section 2 unquestionably is a rights-creating statute. *See supra* at Section III.A.1; *Shelby Cnty. v. Holder*, 570 U.S. 529, 536-537 (2013) (discussing history and scope of Section 2 and explaining how "[b]oth the Federal Government and individuals have sued to enforce § 2"). As one district court explained when denying a motion to dismiss that raised arguments similar to the ones HASD raises here: "[i]t is difficult to imagine more explicit or clear rights creating language. It cannot be seriously questioned that Section 2 confers a right on a particular class of people." *Turtle Mountain Band of Chippewa Indians v. Jaeger*, 3:22-cv-22-PDW-ARS, 2022 WL 2528256, at *5-6 (D.N.D. July 7, 2022); *see also Ga. State Conf. NAACP*, 2022 WL 18780945, at *4 ("If that is not rights-creating language, we are not sure what is.").

Other provisions of the VRA confirm the clear language of Section 2. Section 12 authorizes the Attorney General to initiate criminal proceedings against those who "deprive . . . any person of any right secured by" Section 2. 52 U.S.C. § 10308(a); *see also id.* §10308(c) (same authority with regard to those who "interfere[] with any right secured by" Section 2). That language would make little sense if Section 2 did not create individual rights. Supporting this analysis, the

13

Third Circuit and other courts have recognized private parties' ability to enforce the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), under Section 1983, which contains similar language to Section 2.[8]  *Pa. State Conf. of NAACP Branches v. Sec'y Cmwlth. of Pa.*, 97 F.4th 120, 130 n.5 (3d Cir. 2024); *see also id.* at 140 n.3 (Schwartz, J., dissenting); *Vote.org v. Paxton*, 89 F.4th 459, 473-75 (5th Cir. 2023); *Migliori v. Cohen*, 36 F.4th 153, 159 (3d Cir. 2022), *cert. granted, judgment vacated on mootness grounds*, 143 S. Ct. 297 (2022); *Schwier v. Cox*, 340 F.3d 1284, 1296-97 (11th Cir. 2003).  There is no reason to treat Section 2 differently than the Materiality Provision; Section 2 is presumptively enforceable under Section 1983.

Although defendants can rebut the presumption that a federal right is enforceable through Section 1983, they can do so only by "demonstrat[ing] that Congress shut the door to private enforcement either [1] expressly, through specific evidence from the statute itself" or "[2] impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."  *Gonzaga*, 536 U.S. at 284 n.4 (citations and internal quotation marks omitted).  The HASD does not even mention that Aquino and Lopez bring their

---

[8] "No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper record or paper relating to . . . voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."  52 U.S.C. § 10101(a)(2)(B).

Section 2 claim under Section 1983, let alone rebut this strong presumption of an enforceable federal right.  On the contrary, the HASD *does* acknowledge how Section 1983 "'authorized a person to file a private cause of action against state actors for a deprivation of rights protected by a federal statute.'"  ECF No. 22 at 12 (quoting *Oh v. Phila. Cnty. Bd. of Elections*, Civil Action No. 08-0081, 2008 WL 4787583 (E.D. Pa. Oct. 31, 2008)).

Nor did Congress "shut the door to private enforcement" of Section 2, *Gonzaga*, 536 U.S. at 284 n.4, because "there is certainly no specific exclusion of private actions" in the Voting Rights Act.  *Allen*, 393 U.S. at 555 n.18; *cf. Schwier*, 340 F.3d at 1296-97 (acknowledging that a voting provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101, is enforceable by private plaintiffs through Section 1983 and listing cases).  The VRA does not provide for "a more restrictive private remedy," *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005), than Section 1983.  The Supreme Court recently reiterated that a rights-creating statute cannot implicitly foreclose Section 1983's remedy unless it includes "a private judicial right of action, a private federal administrative remedy, or any carefu[l] congressional tailor[ing] that § 1983 actions would distort." *Talevski*, 599 U.S. at 190 (alterations in original; internal citations and quotation marks omitted). While the VRA permits the United States to enforce Section 2, these public remedies do not constitute "a comprehensive enforcement scheme" and are

"[]compatible with individual enforcement under § 1983." *Gonzaga*, 536 U.S. at 284 n.4 (citations and internal quotation marks omitted); *Turtle Mountain*, 2022 WL 2528256, at *6 ("[P]rivate enforcement actions have co-existed with collective enforcement brought by the United States for decades.").[9]

## IV.   CONCLUSION

For these reasons, Aquino and Lopez can enforce Section 2 of the VRA, and the HASD's motion arguing otherwise should be denied.

---

[9] Recent case law also supports Section 2's enforceability through Section 1983. *See, e.g.*, *Stone*, 2024 WL 578578, at *6 (rejecting argument that private plaintiffs could not seek to enforce Section 2 under Section 1983); *Winnebago Tribe of Neb. v. Thurston Cnty.*, 8:23-cv-20, 2024 WL 302390, at *1-2 (D. Neb. Jan. 26, 2024) (entering consent decree on vote-dilution case after Eighth Circuit panel opinion when plaintiffs sued under Section 1983); *Turtle Mountain*, 3:22-cv-22, 2023 WL 8602898, at *2 (D.N.D. Dec. 12, 2023), *appeal filed* (No. 23-3655) (explaining that defendant did not "ma[k]e a strong showing that he is likely to succeed on the merits" on argument that Section 1983 does not apply to the VRA).

Dated:  May 1, 2024

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division


By:   *s/Zachary J. Newkirk*

R. TAMAR HAGLER
JOHN "BERT" RUSS IV
BRUCE I. GEAR
THARUNI A. JAYARAMAN
ZACHARY J. NEWKIRK
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave NW – 4CON
Washington, D.C. 20530
Phone: (800) 253-3931
tamar.hagler@usdoj.gov
john.russ@usdoj.gov
bruce.gear@usdoj.gov
tharuni.jayaraman@usdoj.gov
zachary.newkirk@usdoj.gov


GERARD M. KARAM
United States Attorney

*s/Michael J. Butler*
Michael J. Butler, PA81799
Civil Rights Coordinator
1501 N. 6th Street
Box 202
Harrisburg, PA  17102
Tel: (717)221-4482
Fax: (717)221-4493
Michael.J.Butler@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2024, I electronically filed the foregoing

Statement of Interest of the United States, using the CM/ECF system, which will

send notification of such filing to all counsel of record.

*/s/Michael J. Butler*

## <u>CERTIFICATE OF WORD COUNT</u>

I certify that, according to the word-counting feature of Microsoft Word, the attached brief contains 4,052 words and therefore complies with the word-count limit set forth in Local Rule 7.8(b).

*/s/Michael J. Butler*